IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. _____

BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF BOULDER, STATE OF COLORADO,

Plaintiff,

v.

ROCKY MOUNTAIN CHRISTIAN CHURCH, a Colorado nonprofit corporation,

Defendant.

---

# COMPLAINT
---

The Board of County Commissioners of the County of Boulder, State of Colorado, states the following Complaint for declaratory relief under F.R.C.P. 57 against Rocky Mountain Christian Church, a Colorado nonprofit corporation:

## I.  Parties

1. The Board of County Commissioners of the County of Boulder, State of Colorado (the "County"), is a body corporate and politic empowered to sue and be sued.

2. Defendant Rocky Mountain Christian Church ("RMCC") is a nonprofit corporation organized pursuant to the laws of the State of Colorado.

## II.  Jurisdiction

3. The Federal District Court of the District of Colorado has jurisdiction in this case under 28 U.S.C §§ 1331 and 2201 because this action arises under the laws of the United States

and involves an actual case or controversy about the interpretation of a federal law, specifically the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. §§ 2000cc to 2000cc-5.

### III. Nature of the Case

4.      The County requests declaratory relief concerning its decision to deny, with certain exceptions, RMCC's application to add approximately 112,000 square feet of building space to its existing church located in unincorporated Boulder County, Colorado. If approved, the request would have resulted in the church being a total of 240,800 square feet in size. RMCC believes the County's decision, once implemented, would constitute a violation of its rights under RLUIPA. The County disagrees with RMCC's position. However, given the lack of guidance under the current state of RLUIPA law, the County wishes to resolve this controversy without the risk of incurring the substantial penalties that can be imposed for RLUIPA violations.

### IV. General Allegations

5.      Boulder County adopted its land use Comprehensive Plan in 1978, pursuant to authority granted to counties under the Colorado County Planning Act, Part 1 of Article 28, Title 30, Colorado Revised Statutes. The primary purpose of the Comprehensive Plan was then, and continues to be, to keep urban development within and next to cities, confined to Community Services Areas ("CSAs"). All other unincorporated lands in the County were, and still are, to remain rural in nature.

6.      Following adoption of the Comprehensive Plan in 1978, the County undertook, and in 1985 completed, a comprehensive downzoning of properties outside of CSAs to assure the

preservation of their rural character. As a result, for the past 25 years the Comprehensive Plan and the County's zoning laws have consistently promoted very low density residential uses and agricultural uses in unincorporated lands located outside of CSAs. This system has implemented and assured the Comprehensive Plan's essential vision that land outside CSAs and their transition areas will remain rural, urban services will not be extended there, and zoning will prohibit urban development and densities.

7. RMCC's property is not inside the Niwot Community Service area. The comprehensive Plan designates the Niwot CSA as a limited CSA, where land uses are not to be urban in nature, but semi-rural. Even if the Church's property were within the Niwot CSA, an urban use would not be acceptable. However, RMCC's property is located close to two large cities, Boulder and Longmont, where urban uses are permitted.

8. Not only is RMCC's property located outside of the Niwot CSA, but it is mapped within a designated rural buffer area. In addition, the property is classified as Agricultural Lands of National Importance, the highest category of agricultural lands in the County. Agricultural land is a nonrenewable resource. Once public and private decisions are made that result in the conversion of agricultural land and/or water to nonagricultural uses, this vital resource is almost always irretrievably lost. Since 1959, the Front Range has been consuming agricultural lands for other purposes at an average of 60,000 acres per year. Between 1959 and 1974, Boulder County led the State of Colorado in this category, a fact that formed one of the core reasons for the eventual development of the original edition of the Boulder County Comprehensive Plan. Trends and forces prompting the agricultural land conversion are documented in the Plan. The purpose of the Niwot rural buffer area is to contain the Niwot Community Service Area to those

boundaries delineated in the Plan. The Niwot CSA boundaries, in turn, have been drawn specifically to limit the amount of intensive development on designated prime agricultural croplands. The Plan expressly recognizes that existing agricultural land uses surrounding the Niwot Community Service Area are land uses which should be continued into the future. The Plan's designation of RMCC's property not only as rural buffer, but as Significant Agricultural Lands Of National Importance, makes the prospect of urban development on the parcel of particular concern under the longstanding tenets of the County's Comprehensive Plan.

9. In 1993, RMCC had a church building on its property that was approximately 50,000 square feet in size. RMCC's property was in the Agricultural Zoning District in unincorporated Boulder County.

10. In 1993, RMCC, in Docket number SU-93-13, applied to the County for zoning approval to permit the establishment of a 20-child pre-school at its church facility. The County approved the request.

11. In 1994, RMCC, in Docket number SU-94-16, applied to the County for the addition of a "Mom's Day Out" program at its church facility to accommodate a maximum enrollment of 40 children between the ages of one and three years. The County approved this request.

12. In 1998, in Docket number SU-97-12, RMCC applied for and the County approved another special use zoning permit for a major expansion of the existing church facility under Article 4-600 of the Boulder County Land Use Code ("the Land Use Code").

13. The County's 1998 special use approval allowed RMCC to more than double the size of the church facility at that time to a total of 103,960 square feet of floor area. The

approval also allowed RMCC to expand its sanctuary capacity from 997 to 1,380 seats and authorized a Christian elementary school (known as the Rocky Mountain Christian Academy) for up to 260 students. The County's decision was subject to specified conditions of approval, including the County's acceptance of RMCC's offer to grant a conservation easement over approximately 14 of its 50 acres of property to provide a buffer area of open land between the church buildings and surrounding rural uses.

14. In 2001, in Docket number SU-00-21, RMCC applied for and the County approved another zoning request, this time to add a sixth grade to its Christian school and to expand the size of a previously approved storage building from 800 to 2,400 square feet.

15. In 2003, in Docket number SU-02-08, RMCC applied for and the County approved still another zoning request to add a seventh and eight grade to its Christian school, making it a full K-8 school. The County also approved RMCC's request to increase the total school enrollment from 260 to 380 students and to add a 7,200 square-foot temporary modular school building.

16. In Condition number 1 of Resolution 2003-54, approving the 2003 zoning request, the County stated: "This approval does not provide any reliance to the Applicant [RMCC] that any future application submitted to Boulder County for review will receive approval from Boulder County.

17. In 2004, RMCC, through Docket number SU-04-008 ("the Docket"), proposed to amend its prior special use approvals for the sixth time, specifically for the following purposes: (1) to substantially expand the existing floor area of the church building, resulting in a structure of 240,800 total square feet, through the addition of a new Christian Education Building, a new

5

gymnasium, a new chapel, and new gathering and gallery space; (2) to increase the RMCC's existing parking capacity by 60%, from 775 spaces to 1,245 spaces; (3) to expand RMCC's internal sanctuary capacity from the currently approved 1,380 seats, to 1,550 seats (with no increase in sanctuary square footage proposed); (4) to purchase and retire one development right associated with an adjacent 5-acre building lot, which RMCC proposed to add to its 50-acre parcel and use for recreational ball fields; (5) to increase its Christian school enrollment from 380 students to 540 students; (6) to add a 12,000 square-foot balcony to the sanctuary, (7) to add 8,000 square feet in basement area; (8) to develop a detention pond and a five-acre soccer field in the conservation easement area of RMCC's property.

18. During the application process for the Docket, RMCC withdrew proposals number 5, 6, and 7 in the above paragraph, and modified its proposal for number 8 by eliminating the request for the soccer field and relocating the detention pond outside of the conservation easement on RMCC's property.

19. On September 15, 2004, the Boulder County Planning Commission held a duly-noticed public hearing on the Docket and unanimously recommended denial of the Docket to the Board of County Commissioners.

20. On November 7, 2005, and continued on January 17, 2006 (for the Church to provide additional information and to allow for public response to that information), and further continued on February 2, 2006 (for the limited purpose of the Board making and announcing a decision), the Board of County Commissioners held a duly noticed public hearing on the Docket ("the Public Hearing"), as required under the County's zoning regulations.

6

21. During the Public Hearing and in documents submitted as part of the Docket, RMCC asserted that every aspect of its proposal was religious in nature and fundamental to its mission. RMCC asserted that there are no alternatives to its proposed expansion that could accommodate its needs nor is it willing to accept a conditional approval by the County that would result in a more modest expansion. Upon information and belief, RMCC was prepared to and intended to sue the County under RLUIPA if it did not receive an outright approval from the County, resulting in a church facility of 240,800 square feet in size.

22. During the Public Hearing, the County made specific requests to RMCC for information supporting RMCC's position that there were no alternatives to its proposed expansions and that a denial would constitute a substantial burden on its religious practice, but RMCC failed to provide sufficient responses.

23. The evidence at the Public Hearing indicated that RMCC could find other locations that would serve RMCC's current and future needs. Constructing or acquiring a church facility at an additional location does not constitute a substantial burden on RMCC's religious practice. RMCC purchased real property and plans to build a new church facility in nearby Frederick, Colorado. The new facility could reasonably serve at least some of the subject facility's current and future needs. The new facility provides another alternative to RMCC that would allow it to continue to operate and grow. RMCC can provide additional services at its existing facility, organize attendance among existing services, or take additional internal and scheduling measures to relieve its alleged overcrowding. Furthermore, RMCC could submit a zoning application downsizing the expansion proposed in the Docket, but it has not done so.

24. On February 2, 2006, the Board of County Commissioners, on a 3-0 vote, and based on the record of the public hearing, reached a decision on the Docket. The Board adopted a written Resolution memorializing this action on February 21, 2006, as Resolution No. 2006-23 (the "Resolution"). The Resolution is attached to this Complaint as Exhibit A and incorporated by reference.

25. As further specified in the Resolution, the County approved the following aspects of the Docket: (1) the increase in sanctuary seating capacity from 1,380 seats to 1,550 seats; (2) the addition up to 10,000 square feet in permanent floor area to replace the 7,200 square-foot temporary modular building approved for school use in 2003; and (3) modification of Condition number 1 of the 2003 approval to no longer require that the existing temporary modular school building be removed at the end of the 2005-2006 school year, but to allow it to remain on RMCC property until a permanent replacement school building can be built. The County denied the remainder of RMCC's requests in the Docket.

26. The primary basis for the County's denial of the Docket, as further stated in the Resolution, was that the church is located on agriculturally zoned land which the County's Comprehensive Plan designates as agricultural lands of national importance and as a rural buffer area between the semi-rural residential area known as Niwot and the surrounding rural lands. The Board found that the proposed facility of 240,800 square feet, with attendant parking for 1,245 vehicles and the ability to accommodate a congregation of well over 1,500 persons drawn from many parts of the County and surrounding areas, was urban in nature, was not in harmony with the predominantly rural character of the neighborhood, was an overintensive use of agricultural land, and violated the County's Comprehensive Plan.

27. As a part of the Resolution, the Board stated its belief that its decision should not be overturned by RLUIPA. The decision does not pose a substantial burden on RMCC or its members' or attendees' exercise of religion, it serves a compelling interest, and is the least restrictive means of serving that compelling interest. The Board also acknowledged that it is not the final or even the appropriate arbiter of this conclusion, and therefore determined that it is prudent and justified to authorize the County Attorney to file a declaratory judgment action in Federal District Court to confirm whether the decision complies with the mandates of RLUIPA.

28. The Board further determined in the Resolution that if a final judicial ruling on this question determines that the Board's decision in the Docket does not comply with the mandates of RLUIPA, the County will conduct appropriate proceedings to modify its decision accordingly.

## V. Claim for Declaratory Relief

29. The County incorporates the allegations in Paragraphs 1 through 28.

30. Under RLUIPA, "No government shall impose or implement a land use regulation in a manner that imposes a substantial burden on the religious exercise of a person, including a religious assembly or institution, unless the government demonstrates that imposition of the burden on that person, assembly, or institution (A) is in furtherance of a compelling governmental interest; and (B) is the least restrictive means of furthering that compelling governmental interest."

31. The County is a "government" as defined by 42 U.S.C. § 2000cc-5(4).

32. RMCC is a religious assembly or institution under the terms of RLUIPA.

33.     The Land Use Code and the Boulder County Comprehensive Plan are "land use regulations" as defined by 42 U.S.C. § 2000-cc-5(5).

34.     RLUIPA fails to define "substantial burden." Neither the United States Supreme Court nor the Tenth Circuit Court of Appeals has specifically defined the term "substantial burden" in the context of RLUIPA. There is a split in the federal courts over the articulation of the "substantial burden" standards, ranging from interpretations that establish a high bar for claimants to show the substantiality of their burden to interpretations that set a lower standard for the religious institution claiming that it has suffered a burden on its religious exercise. The statutory provisions of RLUIPA and the courts, in the context of RLUIPA, have also failed to provide specific guidance regarding the application of the "compelling government interest" and "least restrictive means" test.

35.     The confusion related to the substantial burden test, the compelling governmental interest test, and the least restrictive means test has made it extremely difficult for local government jurisdictions, including Boulder County, to administer its land use regulations with respect to applications from religious institutions. After more than five years of RLUIPA litigation, religious institutions have realized that land use authorities are vulnerable to the threat of litigation: local governments, justifiably concerned over the judicious use of taxpayer dollars, worry about the time, expense, and social cost of litigation against a well-funded or well-respected religious institution. Special interest groups, such as the Becket Fund for Religious Liberty, have come forward to finance RLUIPA litigation on behalf of religious institutions, allowing religious institutions to litigate RLUIPA challenges at little or no financial risk to themselves, whereas local governments, if unsuccessful, are forced to use limited tax dollars in

their general funds to pay costs and fees.  As a result, religious institutions, such as RMCC, invoke RLUIPA early in their application process, placing pressure on local governments to make significant land use decisions with little federal guidance, with the prospect of costly litigation, often resulting in decisions which ignore applicable land use or comprehensive planning regulatory standards.

36. In the current state of RLUIPA law, without further ability to seek guidance from the court through a declaratory judgment action, local governments will be pressured to acquiesce to the threat of a RLUIPA-based challenge.  For example, Denver's 2000-member Greenwood Community Church threatened to file suit under RLUIPA after its application to amend an existing special use permit to double the size of its existing congregation was denied. After the church's threat, city officials reversed their decision.

37. In the current state of RLUIPA law, without further ability to seek guidance from the court through a declaratory judgment action, local governments will effectively be forced to evaluate the application of a religious institution on whether an entity is a religious institution rather than evaluating the application on duly-adopted land use criteria.  RLUIPA's reach will expand to the point where religious institutions are effectively dictating their own land use regulations.  Non-religious political or other organizations dedicated to free speech on one or more issues will suffer a distinct disadvantage vis-à-vis similar organizations that happen to be advancing religious principles.

38. In the current state of RLUIPA law, without further ability to seek guidance from the court through a declaratory judgment action, local governments, such as the County, will inevitably be placed on the horns of a dilemma every time they make a land use decision

regarding a religious institution. This is because, under the Establishment Clause of the United States Constitution, government should not prefer religion to irreligion. Governments such as the county could risk violating the Establishment Clause by applying (or failing to apply) their land use regulations in an effort to comply with the mandates of RLUIPA.

39. This case involves a definite and concrete controversy touching upon the legal relations between RMCC and the County within the jurisdiction of the Court, and the County desires the Court to declare the rights and other legal relations of the parties. This is a real and established controversy admitting a specific relief through a conclusive decree.

40. Through this claim for declaratory judgment, the County intends to settle the actual controversy between RMCC and the County before the County's decision ripens into a possible violation of federal law. RMCC has prematurely sought relief against the County under RLUIPA in a separate action as a result of the County's land use decision. If RMCC's RLUIPA lawsuit is successful, the County would face the substantial penalty under RLUIPA of being required to pay the costs and attorney's fees generated as a result of the RLUIPA case. The County should not be forced to risk the imposition of such a significant penalty before asserting a declaratory judgment claim.

41. The County is entitled to the Court's declaration that the County's decision, as incorporated in the Resolution, will not, once implemented, impose a substantial burden on the religious exercise of RMCC or its members or audiences, or, to the extent that it does impose such a burden, that the burden is in furtherance of a compelling governmental interest and is the least restrictive means of furthering that compelling governmental interest.

42.　　If the Court determines that the County's decision does impose a substantial burden and the burden is not in furtherance of a compelling governmental interest and/or the least restrictive means of furthering that interest, the County is entitled to a declaration that any further decision it makes that is in conformity with the Court's order is not a violation of the Establishment Clause of the United States Constitution.

WHEREFORE, the Plaintiff requests that this Court issue the decrees and orders further described in this complaint and grant the Plaintiff such other and further relief as this Court may deem just and proper under the circumstances.

**BOULDER COUNTY ATTORNEY**

By: s/ David Hughes
David Hughes
Deputy County Attorney
P.O. Box 471
Boulder, CO  80306
dhughes@co.boulder.co.us
(303) 441-3190 - telephone
(303) 441-4794 - facsimile

ATTORNEYS FOR PLAINTIFF

Plaintiff's Address:

P. O. Box 471
Boulder, CO  80306