IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 06-cv-00486-MSK-BNB

BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF BOULDER,
  STATE OF COLORADO,

       Plaintiff,

v.

ROCKY MOUNTAIN CHRISTIAN CHURCH, a Colorado nonprofit corporation,

       Defendant.

_____

## OPINION AND ORDER GRANTING MOTION TO DISMISS
_____

**THIS MATTER** comes before the Court pursuant to the Defendant's Motion to Dismiss Complaint for Declaratory Judgment, or in the alternative, to Abstain from Exercising Jurisdiction **(# 7)**, the Plaintiff's response **(# 8)**, and the Defendant's reply **(# 9)**.

## FACTS

According to the Complaint **(# 1)**, Defendant Rocky Mountain Christian Church ("the Church") has operated a church and related entities in Boulder County, Colorado since at least 1993. In 2004, the Church sought zoning approval from Plaintiff Board of County Commissioners ("the Board") for a project that would more than double the size of the church building, from approximately 104,000 square feet to more than 240,000 square feet; to expand its parking lot area by 60%, and make various other modifications to the property and buildings. The Board conducted several hearings on the Church's expansion plans, during which the Church took

1

the position that the expansion was fundamental to its religious mission and that no modification of the proposal would be acceptable. The Complaint alleges that "Upon information and belief, [the Church] was prepared to and intended to sue the County under [the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 42 U.S.C. § 2000cc *et seq.* ("RLUIPA")] if it did not receive an outright approval."[1] *Docket # 1, ¶ 21.*

On February 2, 2006, the Board voted to approve the Church's request in part, but to reject the major elements of the Church's proposal.[2] According to the Complaint, the Board found that the Church's operations were on agriculturally-zoned land, that the Church's proposed expansion was inconsistent with the predominantly rural character of the area and the county's master zoning plan, and that the Board believed that its decision was consistent with RLUIPA.

---

[1]Later in the Complaint, the Board states that "[the Church] has prematurely sought relief against the County under RLUIPA is a separate action as a result of the County's land use decision." *Docket # 1, ¶ 40.* Subsequent briefing has identified the Church's suit as *Rocky Mountain Christian Church v. Board of County Commissioners*, Colorado District Court, Boulder County case no. 2006 CV 224, filed on or about March 3, 2006. The action raised nine claims: (i) a claim under C.R.C.P. 106(a)(4), that the Board had exceeded its jurisdiction; (ii) a claim under the same rule that the Board's decision constituted an abuse of discretion; (iii) a claim for declaratory judgment under C.R.C.P. 57 that the County's land use regulations are an impermissible delegation of state legislative authority; (iv) discrimination on the basis of religion in violation of RLUIPA; (v) impermissible imposition of a substantial burden on religion in violation of RLUIPA; (vi) the enactment of unreasonable limitations on a religious institution in violation of RLUIPA; (vii) a claim of violation of the First Amendment under 42 U.S.C. § 1983; (viii) a "claim" for attorney's fees under 42 U.S.C. § 1988; and (ix) a claim for "inverse condemnation" of the Church's land. On March 27, 2006, the Board removed the Boulder County action to this court, where it was assigned D.C. Colo. case no. 06-cv-00554-REB-BNB. The docket in that case suggests that some discovery has proceeded, notwithstanding the pendency of a motion by the Board to dismiss the Church's complaint.

[2]The Board approved requests to increase seating capacity in the church building without adding additional space, and approved two aspects of the request relating to a modular building used by the school.

The Board's resolution further authorized the Boulder County Attorney to file a declaratory judgment action in federal court to determine whether its decision was consistent with RLUIPA.

On March 17, 2006, the Board filed the instant action, asserting a single claim seeking a declaration to the effect that either: (i) its decision does not impose a substantial burden on the Church, or (ii) if it does, it does so in furtherance of a compelling governmental interest and via the least restrictive means possible, thus complying with RLUIPA.

The Church filed the instant Motion to Dismiss **(# 7)** for lack of subject-matter jurisdiction, arguing: (i) the Board lacks standing to sue because Colorado state law does not confer upon the Board the power to file suit against a land use applicant; and (ii) that if the Board does have standing, the Court should nevertheless abstain from exercising jurisdiction over this action in favor of the resolution of the Church's lawsuit, now pending before Judge Blackburn.

In response **(# 8)**, the Board argues that: (i) C.R.S. § 30-11-101 authorizes counties to exercise the power to sue or be sued, and this action does not fall within certain exceptions to that power; and (ii) that the Church's case presents an inadequate alternative to the resolution of this action because the Board's decision remains subject to modification and because entry of a declaratory judgment invalidating the Board's decision would allow the Board to avoid the imposition of damages and attorneys' fees under RLUIPA.

In reply **(# 9)**, the Church contends that the statutory authority for counties to sue must be tied to a specific grant of statutory authority, authority it contends is lacking here, and further disputes the Board's arguments that this action presents a superior vehicle for resolving the instant dispute to the action pending before Judge Blackburn.

## ANALYSIS

### A. Standing

The Church first challenges the Board's standing to bring this action. The party asserting federal jurisdiction – here, the Board – has the burden of establishing that it has proper standing to sue. *See e.g. DiamlerChrysler Corp. v. Cuno*, 126 S.Ct. 1854, 1861 & n. 3 (2006); *Lippoldt v. Cole*, 468 F.3d 1204, 1216 (10th Cir. 2006). The parties' dispute as to standing does not strictly address any of the three traditional components of standing – injury in fact, traceability, and redressibility, *Lippoldt*, 468 F.3d at 1216 – but rather, the more circumscribed question of whether the Board, as representatives of Boulder County, have the legal authority to pursue this action on behalf of Boulder County, or whether such a power is retained by the State of Colorado.

Unlike states, counties are not independent governmental entitles existing by reason of sovereignty, and thus, a county enjoys only the powers that the state chooses to delegate to it. *Board of County Commissioners v. Denver Board of Water Commissioners*, 718 P.2d 235, 241 (Colo. App. 1986). Under Colorado law, a county is defined as "a body corporate and politic," and is granted the power to sue and be sued. C.R.S. § 30-11-101(1)(a). However, this right does not amount to a blanket power to sue in any situation the county so deems; the statutorily-conferred right to sue relates to the county's function as a body corporate, and can only be exercised within the framework of the specific powers granted, expressly or impliedly, to counties. *Board of County Commissioners v. Love*, 470 P.2d 861, 863 (Colo. 1970); *see also Romer v. Fountain Sanitation District*, 89 P.2d 37, 42 (Colo. 1995) (a general statutory

authorization to "sue or be sued" would enable a governmental body "to initiate civil litigation only as an incident of the exercise of specific authority granted to it").

*Romer* and *Love* require that the Board point to a specific statutory power, not just the general right to "sue and be sued" under C.R.S. § 30-11-101, that is sought to be vindicated by its suit. The Board's response to the Church's motion does not do so – the Board argues only that the "sue and be sued" clause is sufficient in and of itself to authorize the suit, and that "[t]he County's statutory authority to enact and enforce land use regulations is unrelated to the County's statutory power to sue under these circumstances." *Docket* # 8 at 8-9. Instead, the Board cites to a series of cases for the proposition that "counties are permitted to bring declaratory judgment lawsuits in a wide variety of circumstances." *Id.* at 8. However, few[3] of the cases cited by the Board are germane to the issues here. Nearly all of the cited cases do not even consider the issue of whether the county had adequate standing to sue; instead, the cited cases are merely ones in which, factually, a county had commenced a declaratory judgment action. The mere fact that courts have substantively adjudicated the merits of declaratory judgment actions brought by counties is irrelevant to the issue presented here if the defendants in those cases never raised and the courts never adjudicated the question of whether the county had adequate standing.

Because *Love* and *Romer* clearly repudiate the Board's only argument that the "sue and be sued" clause is independently sufficient to permit this suit, the Court could deem the Board to

---

[3]The only case cited by the Board in which the county's standing to sue was expressly considered is *Board of Commissioners v. Colorado Oil and Gas Conservation Commn.*, 81 P.3d 1119, 1122-23 (Colo. App. 2003). In that case, the standing issue in question was not whether the county had the statutory power to sue, but whether its interest in suing to enforce its own land use regulations must yield where the state had promulgated competing regulations.

5

have failed to carry its burden of establishing its stranding and grant the Motion to Dismiss. However, it need not do so, as this case will be dismissed in any event for the reasons stated below.

### B. Abstention

The Church also requests that the Court abstain from exercising jurisdiction over this case in favor of resolution of the case pending before Judge Blackburn.

The Court has discretion in determining whether and when to entertain an action seeking a declaratory judgment, even though the suit might otherwise meet all jurisdictional requirements. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995); *Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 494 (1942) ("[a]lthough the District Court had jurisdiction of the suit under the Federal Declaratory Judgments Act, it was under no compulsion to exercise that jurisdiction"). The Declaratory Judgment Act creates "an opportunity, rather than a duty," to grant relief, *Wilton*, 515 U.S. at 288, and the propriety of entertaining a declaratory suit in the face of an extant parallel proceeding[4] between the parties and raising the same issues must be considered in light of "teachings and experience concerning the functions and extent of federal judicial power. *Id.* at 287.

The Board argues at the outset that the Court's discretion to decline to hear a declaratory action is circumscribed where the declaratory judgment suit involves a question of federal law. *U.S. v. City of Las Cruces*, 289 F.3d 1170, 1184 (10th Cir. 2002). In *Las Cruces*, the 10th Circuit

---

[4]Both *Brillhart* and *Wilton* involve deferring a federal declaratory judgment action in favor of parallel proceeding in state court. However, with the exception of certain matters discussed more fully *infra.*, there is no reason to believe that this Court's discretion to defer ruling in favor of a parallel case in state court is somehow circumscribed if that parallel case is in federal court.

noted that the Supreme Court in *Wilton* expressly declined to reach that issue, 289 F.3d at 1184, but ultimately decided it was not necessary to resolve the question in this Circuit because the case there did not involve issues of federal law. *Id.* For similar – albeit inverse – reasons, this Court need not reach the issue either, as the Board will have the opportunity to have its federal issues adjudicated regardless of whether the case proceeds here or before Judge Blackburn. Given that the issues presented here are pending before another <u>federal</u> court, this is not the type of case in which this Court's refusal to exercise jurisdiction would deprive the Board of any opportunity to have its federal issues heard. *See e.g. ARW Exploration Corp. v. Aguirre*, 947 F.2d 450, 454 (10th Cir.1991) (court should not decline jurisdiction if the effect would be to deprive the plaintiff of any opportunity to have its claims heard). At worst, this Court's refusal to exercise jurisdiction simply directs the parties to their pending litigation.

The 10th Circuit has identified five factors the Court should evaluate in deciding whether the exercise jurisdiction over a declaratory judgment action: (i) whether a declaratory action would settle the controversy; (ii) whether it would serve a useful purpose in clarifying the legal relations at issue; (iii) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "a race to *res judicata*"; and (v) whether there is an alternative remedy that is better or more effective.[5] *State Farm Fire & Casualty Co. v. Mhoon*, 31 F.3d 979, 983 (10th Cir. 1994); *Las Cruces*, 289 F.3d at 1187. No one factor is determinative. *Las Cruces*, 289 F.3d at 1183.

---

[5]The Court has omitted a fifth factor, whether the declaratory action would increase friction between federal and state courts, as the parties agree that that factor is not implicated here.

In the abstract, the first two *Mhoon* factors – whether a declaratory action would settle the controversy and whether it would serve a useful purpose in clarifying the legal relations at issue – are met here. These two factors primarily examine the identity of the parties and issues in the concurrent proceedings, and examine whether there is a degree of similarity. *Las Cruces*, 289 F.3d at 1183. The parties in both this case and the case before Judge Blackburn are identical. Moreover, the substantive issue raised in this case – whether the Board's decision imposes a substantial burden on the Church and, if so, whether it properly does so under RLUIPA – is apparently identical to the Fifth Cause of Action raised by the Church in the case before Judge Blackburn. Arguably, resolution of that claim in this case would settle the controversy as it related to that particular claim in Judge Blackburn's case, and would, to some extent, clarify the legal relations of the parties in the context of that discrete and particular issue. However, it is clear that, even if the Board were successful on that single issue here, the Church has asserted numerous additional challenges to the Board's decision, and those challenges would remain for adjudication even if this Court were to issue a declaration in favor of the Board on the single issue presented here. In this respect, the declaratory action represents only a single battle in a larger war.

At the same time, the Court is reluctant to find that the existence of alternative claims for relief in the parallel proceeding is enough to tilt the first two *Mhoon* factors against the party seeking a declaration. To so hold would be to encourage parties to manipulate the outcome of the *Mhoon* analysis by clever or cumulative pleading. As framed in *Mhoon*, the first two factors only inquire as to whether the declaratory action could have some salutary effect and, in this regard, the Court finds that these two factors tip slightly in the Board's favor.

The third *Mhoon* factor asks whether the declaratory judgment action constitutes "procedural fencing" or "a race to *res judicata*." Although the Court has no reason to doubt the sincerity of the Board's representations that it commenced the declaratory judgment action in an effort to comply with RLUIPA, it is clear that the declaratory action is nothing more than a procedural maneuver by the Board to seize a strategic advantage. Indeed, the Board admits as much in its Complaint, explaining that even though the Church had already commenced an action raising the exact RLUIPA issue, the Board was bringing the declaratory action in the hopes that it could obtain a ruling on whether it had violated RLUIPA without exposing itself to the potential of damages and attorneys' fees that accompany a RLUIPA violation. *Docket* # 1, ¶ 4, 40. In other words, the Board wants the procedural advantage of presenting this case in the declaratory judgment context, where a defeat would allow it to go back and reconsider its ruling, rather than as a defendant in a substantive RLUIPA case, where a loss would expose it to substantial monetary damages and fees. The Court can appreciate the dilemma that the Board faces in this situation, but that does not change the fact that the declaratory judgment action is nothing more than a protective procedural maneuver that seeks to trump the Church's pre-existing[6] substantive RLUIPA claim. Beyond the potential exposure to damages and fees, the Board presents no meaningful argument as to why it could not simply litigate the substantive issues here as part of the case before Judge Blackburn, or otherwise explain how the two cases will necessarily proceed along different paths. Accordingly, the Court finds that, although not motivated by any ill motive,

---

[6]The Board offers a somewhat confusing argument as to why it could not file its declaratory suit prior to the date on which the Church commenced its substantive action. Ultimately, the reasons why the Board filed <u>when</u> it did are less important than the fact that the Church's lawsuit already encompassed the precise issue presented in this case.

9

the Board's action is merely an effort to seize a more advantageous procedural status here, and thus, this factor weighs against this Court hearing the declaratory judgment action.

The last *Mhoon* factor examines whether there is a better or more effective alternative remedy. The case before Judge Blackburn offers several advantages over this litigation. It aggregates all of the various state and federal legal objections the Church has to the Board's decision, and thus, will offer a conclusive adjudication of the parties' dispute, whereas this case isolates just one of those issues. Moreover, the Court notes that, in Judge Blackburn's case, the Board has raised an additional defense – that RLUIPA is unconstitutional – that it has not (and arguably, cannot) raise here. By examining the docket, it appears that the case before Judge Blackburn has advanced somewhat beyond this one, as the parties there have been engaging in some discovery, whereas the Scheduling Conference has yet to occur in this case.

The only reasonable argument in favor of proceeding to resolve the RLUIPA issue presented here via a declaratory judgment action is the very same dilemma raised by the Board previously – that a substantive ruling that the Board violated RLUIPA would require it to pay damages and attorneys' fees. The Board is entirely correct that, from its point of view, proceeding in the case before Judge Blackburn is a venture with much higher stakes than proceeding here. At the same time, this Court must also be sensitive to the Church's legitimate interest in obtaining a speedy, conclusive, and economical determination of its rights to expand its property. Just as the Board has an interest in preserving its financial resources against unnecessary awards of attorneys' fees, the Church has an interest – an interest endorsed by Congress' decision to make attorneys' fee awards available under RLUIPA – in obtaining

10

compensation for being forced to vindicate its rights.[7]  The Court would be hard-pressed to say that the financial concerns of the Board and the citizens of Boulder County clearly outweigh the financial concerns of the Church and its parishioners.

Moreover, it is precisely the high financial stakes that ensure that the parties present their sharpest case to the Court.  Relieving the Board of the threat of damages and attorneys' fees by adjudicating this case as a declaratory action might give the Board an economic incentive, in this case and others, to grant applications sparingly and incrementally, as litigating those decisions in declaratory actions would bear relatively few costs.  By contrast, where making an incorrect decision bears the possibility of significant financial exposure, the courts will be assured that the Board has carefully scrutinized all of the aspects of its decision and has selected the conclusion that best represents the weighing of legal, financial, and regulatory concerns.

Governmental entities must make difficult and potentially expensive decisions every day. The risk and potential costs of litigation that might result from a contemplated decision are just some of the many factors that play an essential role in the decisionmaking process.  Any decisionmaker would certainly relish the opportunity to engineer those factors out of the decision's calculus, but it is not the obligation of the courts to assist the decisionmaker in doing so, and to thereby assume much of the decisionmaker's burden.  Indeed, the Court could foresee situations in which every difficult decision faced by a governmental entity would generate a declaratory judgment action such as this one, asking for the judicial stamp of approval on the

---

[7]The Court is mindful of the Board's position that RLUIPA cases are often litigated by religious entities with the help of "special interest groups" at "little or no financial risk to themselves."  *Docket* # 1, ¶ 35.  Whatever relevance this contention, to the extent it is actually proven, might have to the decision to award attorney's fees at the end of the case, but it has no bearing on the analysis here at the beginning.

11

entity's contemplated outcome. The dilemma faced by the Board here, significant as it may be, is not so compelling that the Court should choose to exercise its own jurisdiction over one aspect of a controversy that will otherwise receive a full and fair hearing before another judge in this District, simply for the purpose of providing the Board with some financial protection.

Accordingly, the Court declines to exercise jurisdiction over this action, in favor of resolution of the action before Judge Blackburn. Because that action is governed by precisely the same facts and law as this one, there is no risk that the issues presented here will go undecided,[8] or that procedural maneuvering in that case will somehow deprive the Board of relief it could have obtained in this action. Thus, there is no apparent reason for this Court to stay this action, rather than dismiss it outright. *Compare Las Cruces*, 289 F.3d at 1192 (when court declines to exercise jurisdiction, stay rather than dismissal is preferable if party seeking declaration could be unduly prejudiced by the outcome of the parallel case). Accordingly, the Court will dismiss this action pursuant to *Brillhart* and *Mhoon*.

---

[8]The Board argues that the case before Judge Blackburn could be decided on state law grounds, and that the RLUIPA claims could go undecided. Of course, if the Board's decision is found invalid under state law, any issue as to whether that invalid decision complied with RLUIPA would be moot.

## **CONCLUSION**

For the foregoing reasons, the Church's Motion to Dismiss **(# 7)** is **GRANTED**. The Complaint **(# 1)** is **DISMISSED** on prudential grounds in favor of resolution of the same issues in D.C. Colo. case no. 06-cv-00554-REB-BNB. The Clerk of the Court is directed to close this case.

Dated this 16th day of March, 2007

**BY THE COURT:**

Marcia S. Krieger
United States District Judge

.